261 So.2d 767

In re STATE of Alabama

v.

COLONIAL REFRIGERATED TRANSPORTATION, INC., a Corporation.

Ex parte COLONIAL REFRIGERATED TRANSPORTATION, INC., a Corporation.

6 Div. 86.

Court of Civil Appeals of Alabama.

July 14, 1971.

Rehearing Denied Aug. 25, 1971.

Albert Boutwell, J. M. Breckenridge, John S. Foster, Birmingham, for respondents.

William M. Acker, Jr. Birmingham, for petitioner.

BRADLEY, Judge.

This case, 6 Div. 86, is one of two cases—6 Div. 86 & 87—involving allied petitions asking for the issuance of writs of mandamus to review certain orders entered by Judges Whit Windham and Thomas E. Huey, Jr. of the Circuit Court of Jefferson County.

The present case, No. 86, concerns the decision of the Circuit Court of Jefferson County to permit several governmental entities in said county to intervene in an action wherein the State of Alabama (hereinafter referred to as "the State") is the plaintiff and Colonial Refrigerated Transportation, Inc. (hereinafter referred to as "Colonial") is the defendant.

The court proceeding involving the State and Colonial results from an escape assessment of ad valorem taxes against Colonial imposed by the Director of Revenue of Jefferson County, Mr. James Healey, as authorized by Title 51, Section 53, Code of Alabama 1940, as Recompiled 1958.

After the case was appealed to the Circuit Court for a trial de novo, pursuant to Title 51, Section 53, supra, the State propounded written interrogatories to Colonial seeking information to help it prepare its case for trial. The Circuit Court refused to permit these interrogatories to be served on Colonial. Case No. 87, now on file in this court, is concerned with the Circuit Court's decision in this regard.

After the trial court's decision not to permit the State to propound written interrogatories to Colonial, the County Board of Education of Jefferson County (hereinafter referred to as "County School Board"), the City of Birmingham (hereinafter referred to as "Birmingham"), and James Healey, as Director of Revenue of Jefferson County (hereinafter referred to as "Director") each filed a petition for leave to intervene and a complaint in intervention, alleging that the ad valorem taxes had been levied for the benefit of the county and city schools and other public purposes, and that they were thereby interested parties and should be allowed to intervene as party plaintiffs.

The petitions also contained averments that the petitioners' interest in the proceeds of the taxes might be prejudiced or adversely affected should the State be allowed the exclusive prerogative of representing them in the collection of these alleged escape tax assessments.

Colonial filed demurrers to the petitions for intervention and the intervention complaints. These demurrers were overruled, and, thereafter, petitions seeking the issuance of a writ of mandamus were filed in this court. After an oral hearing, we granted the alternative writ of mandamus directing the judges of the Circuit Court who entered the rulings on the demurrers to show cause, if any they had, why their decisions should not be changed. This they have done by way of an answer.

The issue involved in this controversy, as we see it, is whether or not the Circuit Court abused its discretion when it permitted the County Board of Education, Birmingham, and the Director to intervene as party plaintiffs in a proceeding wherein the State was attempting to recover escape ad valorem taxes from Colonial pursuant to statutory directives as set out in Title 51, Code of Alabama 1940, as Recompiled 1958.

The procedure for intervention in a matter on the law side of the Circuit Court is governed generally, in this State, by statute, Dodd v. Deepwater Coal & Iron Corp., 233 Ala. 392, 171 So. 732; although it is cumulative of the right at common law, Gravely v. Phillips, 23 Ala.App. 471, 127 So. 248.

The controlling statute is Title 7, Section 247, Code of Alabama 1940, as Recompiled 1958, and provides as follows:

"Any person may, before the trial, intervene in an action or proceeding, who has an interest in the matter in litigation, in the success of either of the parties, or an interest against both. An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and the defendant, and is made by complaint, setting forth the ground upon which the intervention rests, filed by leave of the court and served upon the parties to the action or proceeding who have not appeared and upon the attorneys of the parties who have appeared, who may answer or demur to it as if it were an original complaint."

■ Before intervention may be had, however, leave of court to file such a petition must first be obtained, and this was so even before the enactment of the statute. Pruett v. Ralston Purina Co., 273 Ala. 594, 143 So.2d 309.

■ In the case at bar permission to intervene was requested by the would-be intervenors. Thereafter, the right to obtain intervention will depend on the claim of interest in the matter being litigated. Pruett v. Ralston Purina Co., supra.

The question then for us to answer is whether or not the County Board of Education, Birmingham, and the Director had such an interest in the litigation between the State and Colonial as to entitle them to intervene on behalf of the plaintiff, the State.

The intervenors claimed that they had an interest in the outcome of the litigation because they stood to gain revenue if the State was successful, and they stood to lose if Colonial was successful, hence they felt that their interests would be better served if they could press their claims directly as a party plaintiff against Colonial, rather than relying on the State to represent their interests, especially in view of the fact that the State had been precluded from utilizing written interrogatories as a means of discovery.

Colonial answers by saying that the "interest" of the intervenors amounts to no more than mere "concern" for the outcome of the litigation; furthermore, even though the State has been denied the use of written interrogatories in its discovery procedures, the State is, nevertheless, the exclusive representative of all interests, including the intervenors, in the effort to recover the escape ad valorem tax assessments from Colonial.

Colonial also contends that the "interest" of intervenors does not amount to a cause of action or right of action that could be exercised independently of the State, to which level it says that such "interest" must rise in order for a proponent thereof to be entitled to intervene as a party plaintiff or defendant. Fisher v. Bankers' Fire & Marine Ins. Co., 229 Ala. 173, 155 So. 538; and Rollins v. Deason, 263 Ala. 358, 82 So.2d 546.

In support of intervenors' contentions that their "interest" does amount to a cause of action, we are cited to two Alabama cases, Brown v. Dixie Highway Express, Inc., 270 Ala. 46, 116 So.2d 369 and Alabama Clay Products Co. v. City of Birmingham, 226 Ala. 631, 148 So. 328, for the proposition that the would-be intervenors have the right to bring actions for the collection of ad valorem taxes independently of the State and would, therefore, be necessary and proper parties in an ad valorem tax matter wherein they are seeking to intervene.

However, we do not consider these cases apt authority for the proposition for which they were cited, because the question of standing to sue, or right to sue, for the taxes claimed was never raised as an issue in the trial of those cases.

Does the "interest" of intervenors in the litigation between the State and Colonial

rise to the point where it enables them to say that they now have, or will have in the future, a right of action against Colonial which is equal in status to that of the State's, and would authorize them to pursue their cause of action against Colonial independently of the State's action?

It appears to us that intervenors would have to say that they now have or will have a right of action coequal with that of the State's right of action in order for them to be allowed to intervene in the litigation between the State and Colonial.

The Legislature of this State appears to have placed the exclusive authority for enforcing the collection of ad valorem taxes in the State. See Title 51, Sections 53, 110 and 131, Code of Alabama 1940, as Recompiled 1958. No other agency of government is mentioned in these statutes except the county tax assessor or collector, and when the matter is before the courts of this State, the parties are always either the taxpayer or the State.

In the case at bar the question of representation arose after the ad valorem assessment had been appealed to the Circuit Court of Jefferson County, and the parties to such appeal were the State as plaintiff and Colonial as the defendant. The parties and procedure were in accord with the statutes appertaining to a controversy of this nature.

It has also been decided that the right of appeal in tax cases is purely statutory and, as a consequence, must be exercised in the mode and within the time prescribed by that statute. Sparks v. Brock & Blevins, Inc., 274 Ala. 147, 145 So.2d 844; and Howell v. State, 282 Ala. 464, 213 So.2d 199.

■ The parties that can appeal to the courts in an ad valorem tax matter are the State and the taxpayer. No other parties are authorized by these statutes to appeal an assessment for ad valorem taxes.

It would seem then that the State has been, by statute, invested with exclusive power and authority to represent all public interests in appeals to the courts from ad valorem tax assessments.

■ There is another factor that must be considered before this controversy can be concluded, however, and that is the rule that intervention is not permitted where the would-be intervenors are not necessary and proper parties in the litigation into which they are attempting to intervene. Rollins v. Deason, supra.

Can we say that the would-be intervenors in the case at bar are necessary or proper parties to the litigation between the State and Colonial?

We have concluded that the would-be intervenors do not have a cause or right of action either present or potential that could be maintained against Colonial independently of the State, principally because of the State's exclusive authority to represent all public interests in a matter of this kind; and, we have decided that their "interest" in the litigation between the State and Colonial amounts to no more than "concern" for the outcome, as any other recipient of tax benefits would exhibit. For example, any parent with a child in the county or city schools would be concerned, and any other citizen of the county would be concerned about the availability of tax money for the various services supplied by these governmental agencies.

■ So, if we said that these peoples' concern amounted to an "interest" within the meaning of Section 247, supra, we would be authorizing practically everyone in Jefferson County, should they desire, to intervene in the litigation heretofore mentioned.

We do not believe that such a construction of Section 247, supra, is authorized.

No complaint was made that the State was not diligently pursuing the collection of these escape tax assessments; nor was there any complaint that the State was unduly handicapped in its ability to properly

prosecute the appeal from these assessments in the courts of this State, other than the statement that the State could not submit written interrogatories to Colonial. But, if the State's inability to submit interrogatories to Colonial be the sole excuse for the intervention, we would point out that neither could Colonial submit written interrogatories to the State. Both of them would be equally disadvantaged. However, we do not consider such a result as authorizing the elevation of the would-be intervenors' "concern" to that level of "interest" envisioned by Section 247, supra.

Notwithstanding the complaint to the contrary, the record indicates that intervenors' rights to and interest in the escape tax assessments being litigated by the State and Colonial will be diligently pursued by the State.

Should there be any lingering doubt, however, about the intervenors being proper or necessary parties, we would suggest that the case of Alabama Textile Products Corp. v. State, 263 Ala. 533, 83 So.2d 42 will completely dispel any traces of such doubt. In construing Section 140 of Title 51, Code of Alabama 1940, as Recompiled 1958, as to who were the proper parties to the appeal, the court said that only the State of Alabama and the taxpayer were named in the statute regulating the appeal, and therefore, the Commissioner of Revenue and the Department of Revenue were not necessary or proper parties to said appeal.

Although the language in Section 140, supra, is a little more specific as to who the parties are to an appeal from tax assessments made by the Department of Revenue, it is still clear that none other than the State and the taxpayer are the parties to an appeal in an ad valorem tax assessment case; therefore, the rationale of Alabama Textile Products Corp. v. State, supra, would be applicable to the case at bar.

We therefore conclude that the would-be intervenors are not necessary nor proper parties to the litigation between the State and Colonial. Alabama Textile Products Corp. v. State, supra.

Having concluded that the would-be intervenors are not necessary nor proper parties to the litigation heretofore mentioned, that they did not have a cause or right of action present or potential independent of the State due to the State's exclusive representation of all public parties, and that their "interest" in the litigation rose no higher than mere "concern" which they share with all other citizens of Jefferson County, it is our opinion that the demurrers to the petitions for intervention and complaints in intervention were improperly overruled; and, as a consequence, the said judges abused the discretion reposed in them when they permitted the applicants to intervene.

For this error, the writ of mandamus will issue to the Honorable Judges Whit Windham and Thomas E. Huey, Jr. of the Circuit Court of Jefferson County, and each of them, to rescind their order overruling the said demurrers and enter a new order sustaining said demurrers and denying intervention to the applicants therefor.

Writ granted.