The plaintiff, Mississippi Valley Title Insurance Company ("Mississippi Valley"), appeals from an order dismissing its complaint against Perry O. Hooper, Sr. The plaintiff also petitions for a writ of mandamus directing the trial judge to allow a second amendment to the complaint. We affirm the dismissal and deny the petition.
 Background
Mississippi Valley alleged in its original complaint that Hooper had acted as an attorney-at-law to render title opinions, and as an insurance agent to issue title insurance, on behalf of Mississippi Valley. Mississippi Valley alleged that Hooper had certified that certain mortgagees who were seeking title insurance from Mississippi Valley would have a "first mortgage lien" on certain parcels of real property that had been the subjects of a series of real estate closings, and that Hooper issued title insurance to the mortgagees based on his certifications. The complaint further alleged that the certifications were not correct, and that as a result the mortgagees filed claims against Mississippi Valley, causing Mississippi Valley to incur damage, including assessments for attorney fees and court costs. In the complaint, Mississippi Valley listed 38 transactions in which it claimed Hooper had issued Mississippi Valley title insurance policies based on faulty certifications, along with the date of each. The earliest such transaction occurred in July 1985, and the latest occurred in February 1988. The complaint was filed in August 1994. Based on these allegations, Mississippi Valley sought damages, based on claims of breach of contract, negligence, wantonness/recklessness, intentional misconduct, and fraudulent misrepresentation.
Hooper moved to dismiss the complaint, pursuant to Rule 12(b)(6), Ala.R.Civ.P., alleging that it failed to state a claim upon which relief could be granted. His motion pointed out that the complaint indicated on its face that the statutory limitations period applicable to claims against a legal service provider (see Ala. Code 1975, § 6-5-574(a)), had expired. The trial judge, D. Al Crowson, dismissed the complaint. In his order, Judge Crowson stated that the limitations period applicable to actions brought pursuant to the Alabama Legal Services Liability Act ("ALSLA") had, indeed, expired. He further stated that, in order to assert a cause of action against Hooper based on acts or omissions that occurred outside Hooper's capacity as a lawyer, Mississippi Valley would have to demonstrate that Hooper owed Mississippi Valley a duty that did not require legal expertise. In the order of dismissal, dated November 17, 1994, Judge Crowson specifically stated:
 " Plaintiff is hereby ordered to amend its complaint within 14 days hereof to show a viable cause of action under an agency theory and further under its fraud Count to comply with Rule 9(b), [Ala.R.Civ.P.,] to set out with specificity the acts constituting fraud. Plaintiff shall also allege dates, in order for the Court to be able to ascertain whether Plaintiff's action is time-barred or not."
After the dismissal, Mississippi Valley filed a "First Amendment to Complaint." That amendment added another count that expressly incorporated the factual allegations of *Page 212 
the original complaint,[2] "except as such may be interpreted to be a cause of action for 'any legal service' as such may be barred by the Alabama Legal Services Liability Act . . . and this Court's Order dated November 17, 1994." The plaintiff then set out a series of allegations concerning the duty of an authorized agent for Mississippi Valley. This alleged duty apparently required Hooper, as an agent, to obtain from "an approved examining attorney" a certificate concerning the title, based on a search of the public records. Mississippi Valley made no further allegations of any duty on the part of Hooper, as an agent and not as a lawyer, other than as relating to the title examination, title opinion, and attorney's certification. The amended complaint claimed only breach of contract, a right of indemnity, and some sort of "intentional" breach of contractual duties.
Hooper filed another motion to dismiss, quoting from the court's original dismissal order and contending that a person other than a licensed practicing attorney may not issue a title opinion. According to Hooper, the amended complaint did not set forth any duties, or breach of duties, not covered by the ALSLA. Judge Crowson, on January 26, 1995, again dismissed the complaint, noting that the plaintiff had failed to abide by the original order of dismissal. In the second order of dismissal, Judge Crowson did not mention anything with regard to a further amendment.
In response to the second order of dismissal, the attorney for the plaintiff wrote a letter to the judge stating that, because in the amendment the plaintiff did not reassert its fraud claims, he did not believe the plaintiff had to comply with the terms of the order regarding the dates. The plaintiff then offered a second amendment to the complaint, incorporating by reference all of the counts of the first amendment to the complaint, with the exception of one paragraph, which was restated to allege that the plaintiff first learned of the title problem in 1990. Within 30 days after the second dismissal, the plaintiff filed a "Motion for Reconsideration or for Leave to Amend or such other Appropriate Relief."[3] In the motion, the plaintiff claimed an automatic right to amend the complaint a second time, but "without waiving or abandoning its position, but out of an abundance of caution," the plaintiff filed the motion asking Judge Crowson to set aside his order of dismissal and to allow the second amendment to the complaint. Judge Crowson denied the motion. The plaintiff filed an appeal of that denial order, as well as a petition for a writ of mandamus directing Judge Crowson to allow the amendment.
This case presents two issues: First, did Judge Crowson commit reversible error when he dismissed the complaint? Stated another way, did the record support Judge Crowson's holding that, as a matter of law, the actions described in the complaint were covered by the ALSLA? Second, did Judge Crowson abuse his discretion by refusing Mississippi Valley's attempt to amend its complaint a second time?
 The Statute of Limitations
Mississippi Valley argues that the trial court erred in dismissing the complaint because, it says, there was not sufficient information on the face of the complaint, or in the amendment, from which the trial court could have reasonably — and inescapably — concluded that the statute of limitations barred the claims. Mississippi Valley bases its argument *Page 213 
on the assumption that on the date Hooper completed his work there had been no damage. Mississippi Valley contends that it incurred damage only when it began to incur costs, i.e., when it had to start paying claims made under its policies; Mississippi Valley apparently insists that, because the complaint did not allege the date on which Mississippi Valley first incurred costs, the trial court could not have reasonably concluded, based on the pleadings before the court, that the limitations period had run. However, the major premise of that syllogism is flawed. We reject the argument that Mississippi Valley incurred legal injury only when it had to pay claims made under its policies.
Generally, the statutory limitations period applicable to a claim based on a breach of duty runs from the date the plaintiff is first entitled to maintain an action based on the breach of duty, regardless of whether the full amount of damage is apparent on that date. Home Ins. Co. v. Stuart-McCorkle,Inc., 291 Ala. 601, 285 So.2d 468 (1973). The limitations period begins to run when the plaintiff first suffers "legal injury," not when the plaintiff may later pay damages or suffer some compounding of the original injury. Michael v. Beasley,583 So.2d 245 (Ala. 1991). In a breach of contract action, for example, the limitations period runs from the time the contract is broken, although substantial damage or loss from the breach is not sustained until afterward. Stephens v. Creel,429 So.2d 278 (Ala. 1983). Even if the plaintiff is ignorant of the injury at the time (except in fraud cases), the limitations period begins to run. Garrett v. Raytheon Co., 368 So.2d 516
(Ala. 1979). This Court has specifically distinguished between the word "damage," which means "loss, injury or deterioration," and the word "damages," which means "a compensation in money for a loss." Boswell v. Liberty National Life Insurance Co.,643 So.2d 580 (Ala. 1994). The statute runs from the date of first "damage," not when "damages" are later paid.
Based on the cases cited in the preceding paragraph, we conclude that any cause of action Mississippi Valley had against Hooper for issuing insurance policies based on a faulty title opinion accrued when the policies were issued, and not when Mississippi Valley later settled lawsuits filed against it based on the policies. Because the complaint set out in detail the date on which each policy was issued, Judge Crowson had a sufficient basis for determining that the statutory limitations period had expired. After all, the latest date alleged by the plaintiff as a date on which Hooper's culpable action occurred was February 23, 1988, and the complaint was not filed until August 13, 1994, more than six years later. Moreover, the cause of action, if any, clearly involved actions taken by Hooper "in whole or in part" as a "legal service provider," as that term is defined in the ALSLA.[4] See § 6-5-572, Ala. Code 1975. Therefore, § 6-5-574 applied, including the provision stating that, notwithstanding the provisions of other statutes of limitations, "no action shall be commenced more than four years after the act, omission, or failure complained of." Section6-5-574(b). The first amendment incorporated by reference the allegations of the original complaint.[5] Judge *Page 214 
Crowson did not err in dismissing the complaint and the first amended complaint.
 The Proffered Second Amendment
Mississippi Valley contends that it had an "automatic right" to amend its complaint a second time, and it asks this Court either to reverse Judge Crowson's order denying the second amendment or, through a writ of mandamus, to compel Judge Crowson to allow the second amendment. Mississippi Valley relies primarily upon Ala.R.Civ.P. 15 and 78 and UnitedHandicapped Industries of America v. National Bank of Commerce,386 So.2d 437 (Ala.Civ.App. 1980).
We note that this present case is somewhat different from the cases relied upon by Mississippi Valley. Mississippi Valley did have the right to amend its complaint after a dismissal. Judge Crowson's original order specifically instructed Mississippi Valley to amend its complaint "to show a viable cause of action under an agency theory" and to "allege dates, in order for the Court to be able to ascertain whether Plaintiff's action is time-barred or not." So, the actual issue confronting this Court can be expressed in two questions: First, does the law give a plaintiff "successive" automatic rights to amend a complaint, without limitation? Second, if so, is Mississippi Valley's "automatic" right to amend affected by the instructions expressed in Judge Crowson's original order of dismissal?
Dismissal of an action is a drastic remedy. SocieteInternationale Pour Participations Industrielles etCommerciales, S.A. v. Rogers, 357 U.S. 197, 78 S.Ct. 1087,2 L.Ed.2d 1255 (1958). Nevertheless, trial courts must strive to bring finality to judgments. This Court has stated:
 "Our society benefits from a judicial system that recognizes and respects the finality and definiteness of a trial court's 'final judgment' deciding what was previously disputed and uncertain. If the rights of litigants were allowed to remain unsettled indefinitely, chaos would surely result."
Helms v. Helms' Kennels, Inc., 646 So.2d 1343, 1347 (Ala. 1994). The Court in Helms went on to quote from a federal case:
 "Very high among the interests in our jurisprudential system is that of finality of judgments. It has become almost a judicial commonplace to say that litigation must end somewhere, and we reiterate our firm belief that courts should not encourage the reopening of final judgments or casually permit the relitigation of litigated issues out of a friendliness to claims of unfortunate failures to put in one's best case."
Id., quoting United States v. Cirami, 563 F.2d 26, 33 (2d Cir. 1977). Given those principles stated in Helms, this Court does not interpret the Rules of Civil Procedure to grant litigants an infinite succession of automatic rights to amend pleadings after successive dismissals. A proper analysis of this case requires a scrutiny of the exercise of Judge Crowson's discretion. United Handicapped Industries, supra. In reviewing the exercise of his discretion, this Court must contemplate the policy interests favoring the finality of judgments. Johnston v. Bridges, 288 Ala. 156, 258 So.2d 866
(1972).
The difference between this case and the cases cited by Mississippi Valley is significant. After all, Mississippi Valley acknowledges in its brief that the right to amend expressed both in Ala.R.Civ.P. 15 and in Ala.R.Civ.P. 78 is conditioned by the language "[u]nless a court has ordered otherwise." Mississippi Valley urges a construction of that language that would give the trial court only two choices: either, by silence, to allow an amendment, or, by express direction, specifically to deny an amendment. This Court cannot accept that construction.
Trial courts have the inherent power to dismiss cases under certain circumstances. Link v. Wabash R.R., 370 U.S. 626,82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Ala.R.Civ.P. 41(b), for example, authorizes a court to dismiss an action with prejudice whenever a *Page 215 
plaintiff fails to comply with an order of the court. Furthermore, "deeply rooted in the common law is the court's power to manage its affairs in order to achieve the orderly and expeditious disposition of cases." Iverson v. Xpert Tune, Inc.,553 So.2d 82, 87 (Ala. 1989). Because the Rules of Civil Procedure clearly give a trial court the power to prohibit an amendment after a dismissal if it "orders otherwise" (see Rule 78) and because the trial court has inherent powers to make orders to facilitate the orderly functioning of the judicial system, a trial court clearly has the authority to fashion some remedy that falls between the extremes of granting an automatic right to amend, by its silence, or prohibiting an amendment outright. The trial court can make the right to amend after dismissal subject to certain narrow conditions. This Court regards communication between the trial court and counsel to be of great value in the litigation process, and clearly within the inherent power of the trial court. Trial courts not only should be permitted, but should be encouraged, to point out the legal deficiencies in pleadings, in order to promote "the just, speedy and inexpensive determination of [the] action." Ala.R.Civ.P. 1(c).
This is precisely what Judge Crowson did. Rather than prohibit an amendment to the complaint, in his original order of dismissal Judge Crowson granted the plaintiff the right to amend if the plaintiff met certain conditions. That is, the plaintiff was granted the right to amend in order to show "a viable cause of action under an agency theory." So, the question becomes whether the plaintiff abided by the court's order by showing, in its amendment to the complaint, "a viable cause of action under an agency theory." The resolution of this question is the key to determining whether Judge Crowson abused his discretion in refusing the second amendment to the complaint.
Not only did Mississippi Valley's "First Amendment to the Complaint" fail to set forth such a "viable cause of action"; even its proffered "Second Amendment to Complaint" failed to do so. That second amendment would have incorporated by reference all of the factual allegations of the original complaint and the first amendment to the complaint, with the exception of a paragraph that was reworded to aver that Mississippi Valley first learned in 1990 of Hooper's alleged omissions. The first amendment to the complaint expressly omitted any "cause of action for 'any legal service.' " Mississippi Valley's attorney, in his memorandum supporting the "motion for reconsideration," conceded that "neither the first amendment to [the] complaint nor the second amendment to [the] complaint attempts to state any claim [based on] fraud [or based on Hooper's providing] legal services." In its brief filed in this Court, Mississippi Valley acknowledges that it chose to "drop the fraud claims." It further acknowledges that its claims alleging legal malpractice "would be controlled by the [ALSLA] statute of limitations." Thus, the only conceivable cause of action left in the pleadings, according to Mississippi Valley, would have been based on Hooper's "non-attorney role as the agent of Mississippi Valley."
Mississippi Valley is not correct, however, when it asserts that its complaint was dismissed solely because of the statute of limitations. Instead, the trial court clearly indicated in its original dismissal order that, as to the "non-lawyer" claims, "plaintiff must show the duty owed in each count and the breach of such duty, bearing in mind that such causes cannot be complained of which require legal expertise." In other words, the trial court found that the plaintiff had failed to allege any duty, other than Hooper's duty as a licensed, practicing attorney, to support any other cause of action. Thus, in order to reverse the order of the trial court, this Court would have to identify some duty of an independent, nonlawyer title insurance agent that Hooper was alleged to have breached.
The only act or omission alleged involved Hooper's alleged reliance on a faulty title opinion. It is well settled that a nonlawyer's rendering a title opinion regarding real property amounts to the unauthorized practice of law. Upton v.Mississippi Valley Title Insurance Co., 469 So.2d 548, 556
(Ala. 1985). As Justice Jones noted in his concurring opinion inLand Title Co. of Alabama v. State ex rel. Porter, 292 Ala. 691,703, 299 So.2d 289, 299 (1974), "an expression of opinion as to title," if "not based *Page 216 
upon an independent opinion of an attorney duly authorized to practice law in this state . . . [constitutes the] unauthorized practice of law." Justice Jones went on to say that the rule allowing only "duly authorized" practicing lawyers to give opinions as to title relates to the public interest and is based on the fact that issuing such opinions requires "legal expertise . . . [that] could hardly be relegated to the perfunctory or the routine." 292 Ala. at 703, 299 So.2d at 300. If a nonlawyer title insurance agent attempts to give advice concerning the effect or manner of taking title to real estate, he or she engages in an activity prohibited by the statute governing the practice of law. Coffee County Abstract TitleCo. v. State ex rel. Norwood, 445 So.2d 852 (Ala. 1983).
Yet, the plaintiff in this case alleges only that Hooper breached some duty as an agent because, the plaintiff says, he relied upon a faulty title opinion when he issued title insurance. The plaintiff admits that, for it to have a cause of action, Hooper's duties as the title insurance agent must be divorced from Hooper's duty as an attorney. The allegations stated by the plaintiff, however, seek to impress upon title insurance agents the duty to "look behind" the title opinion rendered by the attorney, to ensure that the attorney's opinion is correct. This Court, however, has studiously avoided placing on title companies a duty that would require them to engage in the unauthorized practice of law. Lawyers Title Ins. Corp. v.Vella, 570 So.2d 578 (Ala. 1990).[6] If the title insurance agent were required to undertake to render an opinion regarding title to the property separate and apart from the opinion rendered by the lawyer, the title company would be guilty of engaging in the unauthorized practice of law and the public interest safeguarded by the regulations imposed upon the legal profession would be circumvented. "To impose such a duty would place an undue burden on title insurance companies. . . ."Upton at 557. Because it would clearly violate both the law and public policy to require the nonlawyer agent to issue a title opinion, the parties could not create such a duty by contract, in spite of Mississippi Valley's assertions to the contrary. Existing Alabama law does not recognize such a duty, nor will this Court create one in this case.
The plaintiff, in spite of the trial court's order, did not allege any other duty that it says Hooper breached. In the original complaint and in the amendment, the plaintiff alleged no duty separate and apart from Hooper's duty as a legal service provider.
Because Judge Crowson's original order of dismissal set out conditions regarding the amendment to the complaint and the plaintiff did not comply with those conditions, Judge Crowson did not abuse his discretion in denying a second amendment that also failed to state a cause of action. Had Judge Crowson allowed the second amendment, it would have been subject to yet another order of dismissal. So, even if, as the plaintiff asserts, Judge Crowson erred by denying the second amendment, the error would, at most, be "error without injury" (see Ala.R.App.P. 45) or "harmless error" (see Ala.R.Civ.P. 61).
 Conclusion
Mississippi Valley failed to demonstrate an abuse of discretion or any other reversible error. There was ample information in the original complaint to indicate that the statute of limitations barred the claims, and the plaintiff, in spite of Judge Crowson's direction, was not able to state a cause of action based on any breach of duty by Hooper not covered by the ALSLA. Because Judge Crowson, in his original order, had already addressed the plaintiff's right to amend, there was no reason for him to make a subsequent order regarding amendment. Instead, Judge Crowson had "ordered otherwise," as contemplated by Ala.R.Civ.P. 15 and 78, thus precluding further amendments. Accordingly, the judgment of the trial court is affirmed and the petition for the writ of mandamus is denied.
1950564 — AFFIRMED.
1950565 — PETITION DENIED. *Page 217 
ROBERT M. PARKER, H.E. HOLLADAY, HARRY J. WILTERS, Jr., WALTER G. BRIDGES, CARL D. NeSMITH, and STUART LEACH, Special Justices, concur.
JOHN N. BRYAN, Special Justice, concurs in the result.
JOHN DAVID SNODGRASS, Special Chief Justice, dissents.
[2] The allegations of the original complaint, which were incorporated in the amendment to the complaint, as well as a proffered second amendment, referred to Hooper as "an individual licensed to practice law," as "engaged in the practice of law," as "an approved examining attorney," and "as a licensed attorney, [who] was also an approved examining attorney."
[3] Although a "motion for reconsideration" is not technically a motion contemplated by Ala.R.Civ.P. 59, the plaintiff did request, as part of the relief sought, that the original order be modified. Thus, this Court will treat the plaintiff's motion as a Rule 59 motion, which would toll the running of the time for filing an appeal. Although Judge Crowson originally denied the post-trial motion on March 17, 1995, he set aside the denial order ex mero motu. Hooper contends that the appeal time should have been measured from the March 17, 1995, order. This Court does not agree, because Rule 59 clearly contemplates action by the trial court "of its own initiative." Ala.R.Civ.P. 59(d). See Holland v. State, 615 So.2d 1313 (Ala.Cr.App. 1993).
[4] This Court has held in analogous medical malpractice cases that the form of the action is not the decisive test for determining whether the malpractice statute applies. Instead, it is the substance of the claims asserted against the medical professionals. E.g., Sellers v. Edwards, 289 Ala. 2,265 So.2d 438 (1972). The same is true of claims against legal service providers. In fact, although Mississippi Valley has not mentioned the application of Ala. Code 1975, § 6-2-6, this Court notes that this statute is specifically mentioned in, and therefore subsumed by, the ALSLA. Because the substance of the claims against Hooper involves the provision of legal services "in whole or in part," the limitations provisions of the ALSLA would apply.
[5] Of course, in dismissing the first complaint, Judge Crowson also instructed Mississippi Valley to include specific dates in any amendment so that he could determine whether the amendment would be subject to a different statute of limitations. As we understand Mississippi Valley's argument before this Court, it is that because the amendment did not include specific dates, the trial court's judgment should be reversed, on the basis that there was not sufficient information in the amended complaint for the court to determine the date of injury. In other words, Mississippi Valley seeks to use its own failure to comply with the trial court's order to put the trial court in error. As discussed in the next section of this opinion, however, we conclude that Judge Crowson had the authority to allow an amendment subject to certain conditions and that Mississippi Valley's failure to meet those conditions precludes a finding of reversible error. After all, a party "cannot by his own voluntary conduct invite error and then seek to profit thereby." Slaton v. State, 680 So.2d 879, 892
(Ala.Cr.App. 1995); Phillips v. State, 527 So.2d 154 (Ala. 1988).
[6] This present case is distinguishable from a situation where a title opinion, rendered by a lawyer, reveals a defect and the title company has actual knowledge of the defect but fails to communicate it. See Vella. There is no allegation that Hooper, as the title insurance agent, had any knowledge separate and apart from the knowledge he had as Hooper the attorney, that he failed to communicate.